ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
JAN 17 2008
U.S. COURT OF FEDERAL CLAIMS

CHAPMAN LAW FIRM CO.

Plaintiff,

v.

THE UNITED STATES

Defendant.

CoFC No. 08-39 C

**BID PROTEST**

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

**COMES NOW** the Chapman Law Firm Co. ("CLF"), by and through undersigned counsel, and hereby protests the United States Department of Housing and Urban Development's ("HUD's") Request for Proposals for Single Family Home Marketing & Management ("M&M") Services in Ohio and Michigan. CLF files this action in order to object to HUD's failure to comply in this procurement with the requirements of the Competition in Contracting Act ("CICA"), 41 U.S.C. § 253 and ¶ H.2, Option to Increase the Geographic Service Area, of the existing M&M contracts.

Specifically, HUD's proposed procurement is defective because the agency has restricted the competition to a few current M&M contractors excluding CLF among others. HUD's exclusion of CLF is arbitrary and capricious and is based on fallacious information concerning CLF's performance as the incumbent contractor for the services sought in this procurement. Also HUD has not properly justified this limitation on competition and any need for the restricted competition is based on HUD's failure to properly plan for or manage these services. Furthermore, ¶ H.2 requires that any M&M contractor that takes over another contractor's service areas must perform those services at the price proposed by the existing contractor for that area. Despite this restriction and

in violation of the M&M contract HUD is seeking new pricing proposals from the limited offeror pool.

By this filing, and the accompanying Motion for Preliminary Injunction, CLF seeks an order enjoining the Government from taking the actions described above or in the alternative enjoining HUD from conducting a competition for these services without including CLF. Finally, CLF also seeks its attorney's fees and its costs in bringing this action.

## Parties

1. Plaintiff CLF is an Ohio incorporated small business firm with a focus real estate marketing and property management services. CLF is the incumbent contractor for these services. Although CLF has sought a copy of the solicitation documents for this procurement, the Government has refused to provide them to CLF or to permit CLF to participate in this procurement.

2. The Defendant is the United States of America acting through the Department of Housing and Urban Development.

## Jurisdiction

3. Jurisdiction in this Court is based on the Tucker Act, 28 U.S.C. § 1491.

## Factual Background

### A. The Prior Procurement for These Services

4. On or about September 5, 2003, CLF submitted its original Proposal to provide Management and Marketing Services for the states of Ohio and Michigan in response to Request for Proposals No. R-OPC-22505 (the "2003 RFP"). A lengthy series of written negotiations, proposal revisions and protests followed. On September 30, 2005, CLF was awarded Contract No. C-PHI-00958, under the 2003 RFP for the management and

marketing of single family homes for the states of Ohio and Michigan (the "M&M Contract"). The M&M Contract had a start date of October 1, 2006. This award decision was protested by Greenleaf Construction Co., Inc. ("Greenleaf").

5. Subsequently, the Government Accountability Office ("GAO") issued a decision in the case of *Greenleaf Construction Company, Inc.* (January 17, 2006), File B-293105.18; B-293105.19 ("GAO Decision") that recommended that HUD provide clarification related to certain changes in personnel, software and business structure since CLF's Final Proposal Revisions ("FPR").[1]

6. Following the GAO Decision, HUD made absolutely no attempt to initiate communications with CLF or to request additional information from CLF regarding any of the items raised in the GAO Decision. On January 26, 2006, Frank Chapman called Contracting Officer Brenda Thomas in an attempt to find out HUD's intentions and initiate a dialogue regarding the M&M Contract. Ms. Thomas provided no additional information. Frank Chapman followed up with an emailing, also on January 26, stating, "Thank you for speaking with me. I look forward to hearing from you shortly."

7. After hearing nothing from HUD, on January 27, 2006, on its own initiative, CLF sent a comprehensive letter to HUD detailing how it had adequately and comprehensively addressed each and every concern raised in the GAO Decision, offered to provide any additional information required and reiterated that CLF was ready, willing and able to perform under the M&M Contract.

8. HUD provided no response to CLF following the letter of January 27, 2006 and did not, on any occasion, ask CLF for additional information or assistance in responding to the GAO Decision. In addition to the letter sent by CLF on January 27, 2006, CLF successfully passed a Modified Condition Risk Assessment conducted by the

[1] The GAO Decision did not disturb the award to CLF or recommend termination of the M&M Contract.

Defense Contract Audit Agency, an independent third-party auditor. The results of this Audit were reported to Nicole Hunt, Contract Specialist *and* Maureen Musilli, Contracting Officer, as well as other HUD officials, on March 13, 2006.

9. At approximately 4:28 p.m. on April 19, 2006, *without any prior warning or discussion*, CLF received an advisement that the M&M Contract had been "terminated for convenience" and that "Funding in the amount of $29,644,228 is de-obligated from the contract." On April 19, 2006 HUD notified the GAO by letter that it would not be providing a report relating to the GAO Decision as the procurement had been cancelled and, therefore, the GAO Decision was irrelevant.

10. On April 19, 2006 a new pre-solicitation notice of procurement for management and marketing services was posted on FedBizOpps.gov seeking a contract to provide exactly the same, or inferior, services CLF was ready, willing and able to provide under the M&M Contract. On April 21, 2006 the new procurement was taken down from the FedBizOpps.gov website.

11. CLF was told by Contracting Officer Maureen Musilli, on April 20, 2006, that HUD was terminating the M&M Contract due to an alleged "change in circumstances" caused by the increase in the number of HUD properties in Ohio and Michigan since the original contract procurement. In the same conversation, Maureen Musilli also indicated that the reason the Termination for Convenience had taken so long was because she was required to complete the market research concerning the projected volume of conveyances that would occur in the future, which obviously indicated that HUD was actively searching for any reason to terminate CLF's Contract. No explanation was provided to CLF at the time of the termination of the M&M Contract and at no time did HUD discuss the termination of the Contract with CLF or ask CLF for additional information of any kind.

12. Subsequently, CLF filed suit in the Court of Federal Claims, the case was styled Chapman Law Firm Co. v. United States, CoFC No. 06-330C (Judge Wheeler). Although HUD indicated it would take corrective action and award the contract to CLF, Judge Wheeler instead instructed HUD to hold a competition between CLF and Greenleaf (a competing contractor that was previously removed from competition due to a size protest) to obtain the "best value" for the Government. CLF and Greenleaf both subsequently submitted proposals for evaluation.[2] *See* Chapman Law Firm Co. v. United States, No. 06-CV-330 (Fed. Cl. June 20, 2006) ("Chapman II")

13. On December 19, 2006 Maureen Musilli sent CLF a letter indicating that CLF's proposal for M&M services had been accepted and it was to start performance January 1, 2007. CLF's performance was stopped by a new protest to the GAO filed by Greenleaf. The protest was denied and on April 15, 2007, without any prior warning, CLF was instructed to commence performance immediately.

14. On Friday December 28, 2007, after a little over eight months of performance, without any explanation, CLF was told that the option to renew its contract was not being exercised and that CLF should begin the contract provided sixty day "transition out." This occurred despite CLF being told in October 2007 that HUD intended to exercise the option.

## B. **HUD Hindered CLF's Start-up and Performance**

15. As stated above, on April 15, 2007, without prior warning, CLF was told to commence performance of the M&M Contract. CLF was not given the ordinary and contract required 60-day "start-up" or "ramp-up" (days 61 through 136) periods provided in the Contract and provided to all other Management and Marketing Contractors.

---

[2] To successfully re-compete in this competition, CLF was forced to significantly reduce its original contract price.

16. By arrangement with HUD and the prior Contractor, CLF agreed to begin listing HUD homes on its contract required-website for public sale on May 16, 2007. CLF launched its property sales website on the morning of May 16, 2007, but was very shortly thereafter told to take it down as it had not been reviewed and approved by HUD's GTR.

17. HUD subsequently did not allow CLF to begin marketing or selling HUD properties until June 22, 2007. In the intervening time, CLF was forced to acquire additional inventory and expense increasing inventory by more than 1500 more homes.

18. CLF submitted all performance plans in advance of the Contract requirement. However, HUD did not approve CLF performance plans in a timely manner and prior to approval, HUD's GTR required changes to CLF's marketing plan that raised thresholds, increased time between price reductions and adversely affected CLF's ability to sell properties in a timely fashion.[3]

19. HUD did not enforce performance requirements with the prior contractor and, consequently, the lack of oversight caused the majority of the inventory transferred to CLF when it began contract operations to be in disrepair, dirty, damaged and requiring significant clean-out and maintenance efforts by CLF for the properties to be made ready to market.

20. The majority of the properties transitioned to CLF had inaccurate or expired appraisals. In fact, more than five hundred and fifty on the properties transferred to CLF by the prior contractor had expired appraisals and hundreds had not been appraised for years, with dozens having appraisals as much as two or three years old. Based on the foregoing CLF was held to a much different standard than the prior contractor subjecting CLF to a continuously moving goal post.

---

[3] CLF's marketing plan was submitted on May 8, 2007 and not approved until July 25, 2007.

C. **Improper Performance Evaluation**

21. From the beginning of CLF's contract performance HUD improperly evaluated CLF and intentionally penalized CLF to create "unacceptable" scorecard ratings that did not accurately reflect CLF's true performance. CLF received scorecards for July, August, September, October, November and December of 2007.

22. HUD based its scorecards upon evaluations conducted by its Government Technical Representative, Cliff Kellett, who was inexperienced and committed numerous errors in his evaluation of CLF managed properties. Examples of these errors include using the wrong key to attempt to gain access to a HUD property (then citing CLF for improper locks), arbitrarily penalizing CLF for items that were not contract requirements and counting inappropriate items (not outlined in the Contract) as health and safety hazard counted against CLF's score as well as taking pictures of the wrong houses. Although CLF has provided contemporaneous documentation and support for its position the Government has refused to consider CLF's position or modify its scores.

23. HUD intentionally penalized CLF by including the prior contractor's inventory in most of CLF's marketing performance requirements. In other words, the time the prior contractor held properties in inventory without a sale was counted in CLF's rating. For instance, in the July 2007 scorecard, when CLF had been performing since April 15, 2007 (107 days through July), HUD determined CLF's rating for the Critical Performance element "Properties Sell Quickly – Average Holding Time" to be 264 days resulting in an unacceptable rating. CLF would have easily passed this requirement (the requirement calls for average holding time of 150 days or less) if the prior contractor's performance was not included. This is a violation of CLF's contract as the Contract requires the performance measure is from "acquisition" to settlement and the first day CLF acquired any properties was April 15, 2007.

24. Another example of HUD's improper administration of the Contract occurred in the November 2007 scorecard; HUD gave CLF a score of 0% for the Critical Performance Item "Contract Responds Appropriate and Timely to Customer Inquiries." HUD claimed the communications log upon which the rating is based was not posted to CLF's contract required Electronic Management System ("EMS"). CLF immediately demonstrated to HUD that the information was not found due to user error by HUD's reviewer but was, in fact, there on time as required. Despite this, HUD refused to correct CLF's performance score. The prior two months CLF had received ratings of "good" and would have passed this element if HUD had corrected its mistake.

25. Although CLF consistently pointed out errors in HUD's evaluation, HUD did not correct this practice and CLF continued to be penalized and have its performance number grossly distorted. CLF refuted HUD's improper evaluations and repeatedly requested that that HUD correct the improper scorecards and provided documentation and photographic evidence to support its request. CLF did this consistently following receipt of every scorecard.

26. CLF also participated in conference calls with HUD to address the scorecards and reiterated that the scoring was unfair and improper. CLF was told by both the Government Technical Representative Cliff Kellett and Contracting Officer Maureen Musilli that HUD would not reconsider or correct the scores.

27. The scorecards manufactured by HUD do not accurately reflect CLF's real world performance. CLF has improved the condition of HUD properties, reduced holding times and was on a sharply increasing sales trend when its Contract was not renewed. CLF dramatically increased its total sales in the eight months it was allowed to sell properties despite the worst housing market in recent memory and the fallout of the mortgage industry. For example, during the month of December 2007 during what is traditionally the slowest month for real estate sales and in the one of the worst housing

markets in history and in the midst of the collapse of the mortgage industry, CLF sold 519 properties despite these terrible conditions. This is more properties than the prior M&M Contractor sold in December of 2006[4] in a strong real estate market with ready financing.

28. CLF also dramatically improved community relations and participation in the HUD Dollar Homes program causing numerous cities and counties to participate in the program and receiving positive press coverage for HUD in several newspaper articles in Ohio and Michigan.

29. CLF learned about HUD's new procurement through HUD's counsel and then contacted the Contracting Officer Maureen Musilli to inquire. When CLF asked for a copy of the request for proposals submitted to select other management and marketing contractors CLF's request was denied. CLF was also told by Maureen Musilli that CLF could not bid due to HUD's improper impression of CLF's past performance. Upon information and belief, HUD had not determined to follow this course of action before deciding to not exercise CLF's option; rather, the decision to pursue the current procurement course was made after January 1, 2008.

30. CLF also learned from HUD's counsel that the agency's mechanism for awarding the additional Michigan and Ohio regions to the successful existing M&M contractors was through ¶ H.2, Option to Increase the Geographic Service Area, of the existing M&M contracts. This clause states:

> The Government may unilaterally increase the geographic service areas of this contract, by contract modification. The prices for the services ordered in the increased service areas shall be those previously negotiated for those geographic areas and in effect for the ordering period during which the services are ordered. If any such change causes an increase or decrease in the previously negotiated prices, the contractor must assert its right to an

---

[4] HUD's internal database, SAMS, reports indicate that in December 2006 the prior contractor Michaelson, Connor and Boul sold a total of 509 properties.

equitable adjustment within 30 days from the date of receipt of the written unilateral change.

31. Despite the clear requirement of ¶ H.2 that the new contractor must take over the new areas at the prices previously proposed by the prior contractor, HUD is permitting the offerors in this procurement to submit new pricing proposals.

32. CLF is fully operational and remains ready willing and able to perform all of the duties in its contract and, contrary to HUD's improper claim and unjustified ratings, CLF is capable of performing and is in the best position to fulfill HUD's requirements in Ohio and Michigan.

**Count I**

(Violation of the Terms of 41 U.S.C. § 253)

33. Plaintiff incorporates by reference the allegations presented in paragraphs 1 to 32 above.

34. The Competition in Contracting Act requires Government agencies promote full and open competition in seeking proposals for supplies and services. See 48 C.F.R. § 6.101.

35. Although there are exceptions to the requirement for full and open competition, see 48 C.F.R. Subparts 6.2 and 6.3, upon information and belief those exceptions do not apply here or HUD has not properly justified the use of these exceptions.

36. Rather the record is clear that HUD decided that it no longer desired to procure these services from CLF and without advance planning or forethought HUD decided to not exercise CLF's option without an alternative procurement plan.

37. Plaintiff respectfully requests that the Court issue an order immediately enjoining the Government from taking the actions described above or in the alternative

enjoining HUD from conducting a competition for these services without including CLF. Finally, CLF also seeks its attorney's fees and its costs in bringing this action.

**Count II**

(HUD's Violation of ¶ H.2)

38. Plaintiff incorporates by reference the allegations presented in paragraphs 1 to 37 above.

39. HUD's mechanism for awarding the additional Michigan and Ohio regions to the successful existing M&M contractors was through ¶ H.2, Option to Increase the Geographic Service Area, of the existing M&M contracts. This clause states:

> The Government may unilaterally increase the geographic service areas of this contract, by contract modification. The prices for the services ordered in the increased service areas shall be those previously negotiated for those geographic areas and in effect for the ordering period during which the services are ordered. If any such change causes an increase or decrease in the previously negotiated prices, the contractor must assert its right to an equitable adjustment within 30 days from the date of receipt of the written unilateral change.

40. Despite the clear requirement of ¶ H.2 that the new contractor must take over the new areas at the prices previously proposed by the prior contractor, HUD is permitting the offerors in this procurement to submit new pricing proposals.

41. Plaintiff respectfully requests that the Court issue an order immediately enjoining the Government from taking the actions described above. Finally, CLF also seeks its attorney's fees and its costs in bringing this action.

**Count III**

(HUD's Violation of its Implied Duty of Good Faith and Fair Dealing)

42. Plaintiff incorporates by reference the allegations presented in paragraphs 1 to 41 above.

43. By its arbitrary and capricious decision to ignore the clear requirements of CICA and ¶ H.2, HUD has breached its duty of good faith and fair dealing it owed to CLF as a proposed offeror under the procurement.

44. Based on these circumstances HUD's actions are not justified and the Plaintiff's protest should be sustained.

45 Plaintiff respectfully requests that the Court issue an order immediately enjoining the Government from taking the actions described above or in the alternative enjoining HUD from conducting a competition for these services without including CLF. Finally, CLF also seeks its attorney's fees and its costs in bringing this action.

## Relief Requested

**WHEREFORE** Plaintiff respectfully requests a judgment against the United States of America and further requests:

1. That the Court enjoin HUD from permitting performance of any contract under the solicitation.

2. Or in the alternative enjoining HUD from employing the funds obligated to the performance of any contract awarded under the solicitation to any entity other than CLF.

3. That CLF be permitted to compete in the procurement for these services.

4. That HUD amend the solicitation to reflect that offerors must offer to perform the services at CLF's previously proposed price.

5. That in any event CLF be awarded its reasonable costs and attorneys' fees and such further relief as is determined just and fair.

Respectfully submitted,

Date: 1/17/08

By: ______________________

James S. DelSordo, Esq.
Argus Legal, LLC
9255 Center St., Suite 307
Manassas, VA 20110
(703) 368-8770
fax (703) 368-8772

Counsel for Plaintiff Chapman Law Firm Co.