# In the United States Court of Federal Claims

No. 08-39C

(Filed Under Seal: March 25, 2008)
(Reissued: April 2, 2008)[1]

| | | |
|---|---|---|
| CHAPMAN LAW FIRM CO., Plaintiff, v. THE UNITED STATES, Defendant. | * | Bid Protest; Contract Modification; Competition in Contracting Act Requirement for Full and Open Competition; 41 U.S.C. § 253(a)(1)(A); Cardinal Change Doctrine. |

*James S. DelSordo*, Argus Legal, LLC, Manassas, Virginia, for Plaintiff.

*Lauren S. Moore*, with whom were *Jeffrey S. Bucholtz*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

This case presents yet another challenge to a Department of Housing and Urban Development ("HUD") procurement for managing and marketing ("M&M") services in Ohio and Michigan. HUD, through the Federal Housing Administration ("FHA"), insures

[1] The Court issued this opinion under seal on March 25, 2008, and gave the parties until April 1, 2008, to submit any proposed redactions of competition-sensitive, proprietary, confidential or other protected information. Neither party proposed any redactions, and therefore this decision is released in its entirety.

approved commercial lenders against the risk of loss on loans for the purchase of single-family homes by private buyers. When an FHA-approved loan is in default, the lender forecloses on the home, and conveys it to HUD. By this mechanism, HUD acquires title to thousands of homes each year. HUD employs contractors to manage and market the homes in its possession. A more detailed history of HUD's procurement and the ensuing litigation is described in Chapman Law Firm Co. v. United States, 71 Fed. Cl. 124 (2006), aff'd in part, rev'd in part, and remanded, 490 F.3d 934 (Fed. Cir. 2007).

In an August 2003 Request for Proposals ("RFP"), HUD sought competitive proposals for M&M services in each of 24 geographic areas throughout the United States. HUD grouped the 24 areas into four regional Home Ownership Centers ("HOCs"). The four HOCs were designated as "Philadelphia," "Atlanta," "Denver," and "Santa Ana." The second geographic area of the Philadelphia HOC, known as "P-2," encompassed Ohio and Michigan. Id. at 126. Defendant states that, at any given time, HUD has approximately 20 M&M contracts in place to cover all 50 states. Deft.'s Motion at 4, n.4.

In the present action, Plaintiff Chapman Law Firm ("Chapman") alleges that HUD allowed its contract in Ohio and Michigan to expire after one year, and that HUD unlawfully solicited bids from a limited number of contractors for the Ohio and Michigan work, in violation of the Competition in Contracting Act ("CICA"), 41 U.S.C. § 253(a)(1)(A). Chapman also alleges that HUD arbitrarily excluded it from bidding for this work. Defendant responds that CICA's full and open competition requirements do not apply because HUD is not soliciting new bids. According to Defendant, HUD simply is making an in-scope modification of other contracts to take over the M&M services that Chapman previously had provided.

The parties have filed cross-motions for judgment on the administrative record pursuant to Rule 52. For the reasons stated below, the Court finds that Chapman's claim is without merit. HUD's proposed action is not a solicitation subject to CICA's competition requirements, but rather is an in-scope contract modification of existing M&M contracts permitted under clause H.2 of each contract selected for modification. Accordingly, Defendant's motion for judgment on the administrative record is GRANTED, and Plaintiff's cross-motion for judgment on the administrative record is DENIED.

## Factual Background[2]

On December 19, 2006, after protracted litigation, HUD awarded to Chapman Contract C-PHI-00958 ("the Contract"), requiring Chapman to provide M&M services for

[2] The facts are based upon the Administrative Record, cited as "AR" herein.

the P-2 area for a one-year term from January 1, 2007 to December 31, 2007. AR 1, 2-6. The Contract provided the Government with the option to renew for four additional one-year terms. AR 5. Like all of HUD's M&M contracts, Chapman's Contract contained the following clause H.2, entitled "Option to Increase the Geographic Service Area:"

> [t]he Government may unilaterally *increase the geographic service areas* of this contract, *by contract modification*. The prices for the services ordered in the increased service areas shall be those previously negotiated for those geographic areas and in effect for the ordering period during which those services are ordered. If any such change causes an increase or decrease in the previously negotiated prices, the contractor must assert its right to an equitable adjustment within 30 days from the date of receipt of the written unilateral change.

AR 6 (emphasis added).

Citing performance related issues, Maureen Musilli, HUD's contracting officer, determined that HUD would not exercise its option to renew the Contract with Chapman. AR 8-11. Ms. Musilli notified Chapman of this determination by letter dated December 28, 2007. AR 12-13. With the exception of a 135-day transition-out period, Chapman's Contract expired on December 31, 2007. As a result, Chapman currently is in a "transition-out" phase with regard to the P-2 properties. AR 5, 12. Under the "transition-out" procedure, Chapman continued to receive all new assignments for 60 days, from January 1 through February 29, 2008. For the next 75 days, new assignments would go to the successor contractors, with Chapman continuing to manage only the properties in its pre-existing inventory. On May 14, 2008, 135 days after expiration of the Contract, Chapman's work will be concluded. AR 13; see also Federal Acquisition Regulation ("FAR") ¶ 52.217-8, "Option to Extend Services."

On January 7, 2008, Vance Morris, Director of HUD's Office of Single Family Asset Management, recommended that HUD utilize clause H.2 to transfer the M&M responsibilities for the P-2 region to existing M&M contractors that had sufficient capacity to perform the services. AR 14-19. Due to the high volume of HUD-owned properties in the P-2 region, Mr. Morris recommended that HUD divide the region into two geographic areas, one for Ohio and one for Michigan. Id. Mr. Morris described a method for creating a short list of qualified incumbent contractors based on performance scores and capacity data. Id. Keith Surber, the HUD contracting officer responsible for acquiring replacement M&M services in Ohio and Michigan, adopted this approach. See, e.g., AR 20-21.

Rather than invoking clause H.2 unilaterally to expand an existing contractor's services, HUD decided to ask selected contractors if they wanted to expand their service areas, and if so, at what price. Accordingly, on January 11, 2008, HUD sent letters to four existing contractors, notifying them that HUD desired M&M services for Ohio and Michigan, and requesting price proposals for each state by January 18, 2008. AR 20-31. After ascertaining which price was most advantageous to the Government, HUD intended to invoke clause H-2 and modify two of the four contracts by January 31, 2008. Id.

On January 17, 2008, Chapman filed this action, alleging that HUD improperly excluded it from submitting price proposals for M&M services in Ohio and Michigan. Chapman maintained that it is ready and willing to provide the M&M services, and requested that the Court issue injunctive relief to prevent HUD from continuing with the modification or, in the alternative, from conducting a competition for these services without including Chapman. After considering the arguments presented in the parties' briefs and those made during conference calls on January 18 and 31, 2008, the Court denied Chapman's application for a temporary restraining order and motion for a preliminary injunction.

## Discussion

### A. Jurisdiction and Standard of Review

The Court has jurisdiction over pre-award and post-award bid protests "in connection with a procurement or a proposed procurement" pursuant to 28 U.S.C. § 1491(b)(1), as amended by the Administrative Dispute Resolution Act of 1996 (ADRA) Pub. L. No. 104-320, §§ 12(a)-(b)(1996). In this case, Chapman is not challenging an award, but claims that the procuring agency has not complied with CICA's competition requirements for soliciting goods and services. Actions such as these, requesting the Court to enforce statutory requirements for obtaining full and open competition, are also within the Court's jurisdiction. CW Gov't. Travel v. United States, 61 Fed. Cl. 559, 567 (2004); see also CCL, Inc. v. United States, 39 Fed. Cl. 780, 789 (1997) ("The new language permits both a suit challenging government action which is self-consciously a competitive procurement as well as what [plaintiff] is claiming here: that [defendant] is procuring goods and services through a process that should have been the subject of competition . . . .").

The Court reviews challenges to agency actions according to the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. 28 U.S.C. § 1491(b)(4). Under the APA, the protestor may challenge an agency's action on one of two grounds: (1) the procurement official's decision lacked a rational basis, or (2) the procurement method or procedure constituted a violation of law or regulation. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001); see also 5 U.S.C.

§ 706(2)(A); Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). In either case, the protestor bears the "heavy burden" of proving the lack of a rational basis or a violation of law by a preponderance of the evidence. Impresa, 238 F.3d at 1332-33; Emery Worldwide Airlines, Inc. v. United States, 49 Fed. Cl. 211, 222 (2001).

In reviewing a motion for judgment on the administrative record, this Court resolves issues of law and decides all necessary issues of fact based upon the administrative record created before the agency. Bannum, 404 F.3d at 1355-56. In contrast to a motion for summary judgment, "the standard of review for Judgment on the Administrative Record is narrower, i.e., given all the disputed and undisputed facts, whether the plaintiff has met the burden of proof to show that the decision was not in accordance with the law." Lewis v. United States, 67 Fed. Cl. 158, 162 (2005); see also Park Tower Mgmt., Ltd. v. United States, 67 Fed. Cl. 548, 560 (2005).

B. HUD's Contract Modifications Are Within the Scope of the M&M Contracts.

As noted above, CICA imposes upon an executive agency a duty to obtain "full and open competition" in its procurements. 41 U.S.C. § 253(a)(1)(A). This requirement, however, does not apply to "contract modifications within the scope and under the terms of an existing contract." FAR § 6.001(c); see also AT&T Commc'ns, Inc. v. Wiltel, Inc., 1 F.3d 1201, 1205 (Fed. Cir. 1993) ("only modifications outside the scope of the original completed contract fall under the statutory competition requirement").

In determining whether a modification is outside the scope of the original government contract, the Court applies the "cardinal change doctrine." Wiltel, 1 F.3d at 1205 (noting that CICA sets forth no standard for determining when a modification is within the scope of the original contract). "[A] cardinal change . . . occurs when the government effects an alteration in the work so drastic that it effectively requires the contractor to perform duties materially different from those originally bargained for." Id. If the contract as modified materially departs from the scope of the original procurement, then CICA's competition requirements will apply. See, e.g., CWT/Alexander Travel, Ltd. v. United States, 78 Fed. Cl. 486, 494 (2007); HDM Corp. v. United States, 69 Fed. Cl. 243, 254 (2005). In its analysis, the Court should look to whether the original offerors were adequately advised of the potential for the types of changes that in fact occurred, and "whether the modification is of a nature which potential offerors would reasonably have anticipated." Wiltel, 1 F.3d at 1207 (quoting Neil R. Gross & Co., B-237434, 90-1 CPD ¶ 212 at 3 (February 23, 1990)).

In the present case, Chapman does not dispute that the nature of the work in the proposed modifications would require incumbent contractors to provide the same M&M services in Ohio or Michigan as they currently provide under their existing contracts in other

regions. See AR 20-21. The only changes at issue here are the geographic expansion of service and the possibility of new pricing. Deft.'s Motion at 12-13. These two changes clearly were contemplated in the M&M contracts. Clause H.2, found in every M&M contract, including the four contracts selected for modification, expressly allows HUD to "unilaterally increase the geographic service areas of this contract, by contract modification." AR 6. Clause H.2 also provides that if the modification causes a change in the price, the contractor may assert its right to an equitable adjustment. Id. All of the contractors, including Chapman and the contractors selected for the modification, reasonably should have anticipated the potential for precisely the kind of modification that HUD seeks to make.

In an attempt to avoid HUD's express contractual authority to make the proposed modifications, Chapman argues that actions which would otherwise constitute a modification nevertheless become solicitations for new contracts when the Government shops around for the best incumbent contractor. Pltf.'s Brief at 6. However, Chapman's argument misses the mark. When applying the cardinal change doctrine, the Court focuses on the nature of the work to be done and whether the modification is one which existing contractors reasonably should have anticipated. See Wiltel, 1 F.3d at 1205, 1207. If the nature of the work under the modified contracts is not materially different, and the contractors were adequately advised of the potential for the change that in fact occurred, the modification is within the scope of the original contract. The Court will not impose additional restrictions on how an agency chooses to modify existing contracts. HUD believed it would be advantageous to research potential pricing before issuing modifications, rather than receiving requests for equitable adjustments after the fact. Deft.'s Motion at 5, n.5. It is not the business of this Court to question the wisdom of that approach. Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332-33 (Fed. Cir. 2001)("[C]ontracting officers are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process"); Bender Shipbuilding & Repair Co. v. United States, 297 F.3d 1358, 1362 (Fed. Cir. 2002) (deferring to "informed, complicated business judgment" of contracting officer).

In any case, HUD's selection of the limited pool of eligible firms was hardly random. As is noted in the record, HUD compiled a list of all incumbent contractors and narrowed the field to four firms according to past performance ratings and capacity. AR 14-19. It is entirely sensible that, having a ready list of incumbent contractors, HUD would seek to know which of them could accommodate the additional work at the lowest possible cost to the Government. In this way, HUD assured itself of securing not only a low price, but also a contractor familiar with the work to be done. If HUD decided, as it apparently has, that it is in some way preferable to modify an existing contract than to create a new one, the Court must show deference to that determination as long as the modification remains within the scope of the original contract. See, e.g., R & W Flammann GmbH v. United States, 339 F.3d

1320, 1322 (Fed. Cir. 2003) ("[w]hen an officer's judgment is reasonable, a court may not substitute its judgment for that of the agency."). As discussed above, the modifications were within the scope of the original contracts.

Finally, Chapman argues that it should have been included among the list of potential contractors, and if it had been included and fairly evaluated, it would have received the work covered by the modifications. Unfortunately for Chapman, HUD allowed its contract to expire on December 31, 2007.[3] Consequently, at the time HUD developed its list of eligible firms and requested price proposals from the four selected contractors, Chapman was not an incumbent contractor with a contract capable of being modified. AR 5.

## Conclusion

For the foregoing reasons, Defendant's motion for judgment on the administrative record is GRANTED. Plaintiff's cross-motion for judgment on the administrative record is DENIED. Pursuant to Rules 52.1 and 54, the Clerk of the Court shall enter judgment for Defendant and dismiss Plaintiff's complaint with prejudice. No costs are awarded.

This opinion is filed under seal. On or before April 1, 2008, the parties shall carefully review this unredacted opinion for competition-sensitive, proprietary, confidential or other protected information, and submit to the Court proposed redactions to this opinion, if any, before it is released for publication.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge

[3] Whether HUD fairly evaluated Chapman's performance and properly allowed Chapman's contract to expire is not at issue in this case. Chapman is free to bring any such claim through normal Contracts Disputes Act procedures. See 41 U.S.C. §§ 601-613.